| | |
|---|---|
| MATTHEW DILLARD, Administrator of the Estate of Melissa Rice, <br>     Plaintiff, <br> v. <br> CHIP HALL, in his official capacity as Sherriff of Jackson County; WESTERN SURETY COMPANY, surety for the Sheriff; PATRICK McCOY, in his official and individual capacity; RIDGE PARRIS in his official and individual capacity; STEPHEN WATSON, in his official and individual capacity; ANIYAH McMULLEN, in her official and individual capacity, EMILY COUVILLON, in her official and individual capacity; SHONDRA COLLINI, in her official and individual capacity; MARK JUNALUSKA, in his official and individual capacity; JUSTIN NICHOLSON, in his official and individual capacity, and KAYLA ELLIOTT, in her official and Individual capacity; KAITLYN BRADLEY, in her official and Individual capacity. <br>     Defendants | COMPLAINT <br><br> WRONGFUL DEATH <br> VIOLATION OF 42 U.S.C. 1983 |

    NOW COMES the Plaintiff, on behalf of the Estate of Melissa Rice, complaining of the Defendants and does hereby allege:

1. Plaintiff, Matthew Dillard, a resident of Jackson County, North Carolina, has duly qualified as administrator for the Estate of Melissa Rice (hereinafter "Decedent") who hung herself while in the custody of Defendant Hall and his officers in Jackson County on January 16, 2019, and subsequently died in Buncombe County on January 18 2019.

2. On January 16, 2019, Defendant Hall (hereinafter "Hall") was the elected Sheriff of Jackson Count and charged by statute with control and operation of the Jackson County Detention Center (hereinafter the "jail"). At all times relevant hereto, Hall had custody

and control over the jail under NCGS 162-22 and had a non-delegable responsibility for maintaining adequate supervision of the jail pursuant to NCGS 162-24 and was the final policymaker for the jail and its operation for purposes of 42 U.S.C. 1983.

3. On January 16, 2019, Hall had legal obligations pursuant to NCGS 153A-224 to provide continuous and necessary custodial supervision of all detainees in the custody of the jail, including Decedent, and to be at all times informed of the prisoners' general health and emergency needs. He is sued in his official capacity under NCGS 58-76-5 and NCGS 153A-435 as the final policymaker responsible for the negligent and unlawful practices at the jail. These practices include the failure to provide sufficient training to detention center officers to recognize and prevent suicidal actions of detainee, failure to provide decedent with necessary mental health services, and the systematic failure to comply with North Carolina regulations for jails, local confinement centers, and detentions centers promulgated in 10A NCAC 14J .0101 et seq. which resulted in the death of Decedent.

4. Defendant Western Surety Company is a South Dakota company and sued as the Sheriff's surety under NCGS 58-76-5. Western Surety Company issued the statutorily mandated surety bond to cover any injury caused by the neglect or misconduct of the Sheriff or those he employees. On January 16, 2019, Sheriff Hall was obligated under state law to obtain and maintain said surety bond and by doing so, waived sovereign immunity as to the claims in this matter, at least to the extent of the bond.

5. Upon information and belief, on January 16, 2019, Hall has waived governmental or sovereign immunity from State tort claims in this case pursuant to NCGS 153A-435, by purchasing a surety bond, liability insurance, or participation in a government risk pool, to cover any injuries or deaths caused by the negligent acts or misconduct of Hall or those he employees.

6. NCGS 153A-224 imposes an affirmative duty upon Hall and his jail employees to provide continuous custodial supervision of all persons in their custody and to be at all times informed of the prisoners' general health and medical needs to protect them from injury or death.

7. Violation of the mandatory duty imposed by NCGS 153A-224 is a misdemeanor crime and creates an exception to and precludes the application of the doctrine of governmental immunity to the torts claimed in this action.

8. NCGS 162-55 imposes an affirmative statutory duty upon Hall and his jail employees from doing or causing to be done, any wrong or injury to the prisoners committed to his custody, including Decedent.

9. Violation of the mandatory and statutory duty imposed by NCGS 162-55 is a misdemeanor crime which creates an exception to and precludes the application of, the doctrine of governmental immunity to the torts claimed in this action.

10. Defendant Patrick McCoy (hereinafter "McCoy") was employed by Sheriff Hall on January 16, 2019, as Captain of the Sheriff's Department and assigned to supervise, oversee, and control the operations of the Jackson County Detention Center, and is being sued in his official capacity for his failure to properly train and supervise his subordinate employees to keep continuous and necessary custodial supervision of Decedent, including failing to keep Decedent under enhanced watch as required by 10A NCAC 14 J .0601 and is being sued in his individual and official capacity for violation of Decedent's Fourteenth Amendment rights.

11. Defendant Ridge Parris (hereinafter "Parris") at all times relevant hereto was employed by Hall as a Deputy Sheriff and is being sued in his official and individual capacity. The surety bond, risk pool or commercial insurance obtained by Hall, and the statutory duty referred to in the previous paragraphs, waive or overcome any claim for public officer immunity from North Carolina common law claims against Parris, and he is liable in his official capacity for his negligent acts alleged herein.

12. Defendant Stephen Watson (hereinafter "Watson") at all times relevant hereto was employed by Hall as a Deputy Sheriff and is being sued in his official and individual capacity. The surety bond, risk pool or commercial insurance obtained by Hall, and the statutory duty referred to in the previous paragraphs, waive or overcome any claim for public officer immunity from North Carolina common law claims against Watson, and he is liable in his official capacity for his negligent acts alleged herein.

13. Defendant Aniyah McMullen (hereinafter "McMullen") at all times relevant hereto was employed by Hall as a Deputy Sheriff and is being sued in her official and individual capacity. The surety bond, risk pool or commercial insurance obtained by Hall, and the statutory duty referred to in the previous paragraphs, waive or overcome any claim for public officer immunity from North Carolina common law claims against McMullen, and she is liable in her official capacity for her negligent acts alleged herein.

14. Defendant Emily Couvillon (hereinafter "Couvillon") at all times relevant hereto was employed by Hall as a Deputy Sheriff and is being sued in her official and individual capacity. The surety bond, risk pool or commercial insurance obtained by Hall, and the statutory duty referred to in the previous paragraphs, waive or overcome any claim for public officer immunity from North Carolina common law claims against Couvillon, and she is liable in her official capacity for her negligent acts alleged herein.

15. Defendant Shondra Collini (hereinafter "Collini") at all times relevant hereto was employed by Hall as a Deputy Sheriff and is being sued in her official and individual capacity. The surety bond, risk pool or commercial insurance obtained by Hall, and the statutory duty referred to in the previous paragraphs, waive or overcome any claim for public officer immunity from North Carolina common law claims against Collini and she is liable in her official capacity for her negligent acts alleged herein.

16. Defendant Mark Junaluska (hereinafter "Junaluska") at all time relevant hereto was employed by Hall as a Deputy Sheriff and is being sued in his official and individual

capacity. The surety bond, risk pool or commercial insurance obtained by Hall, and the statutory duty referred to in the previous paragraphs, waive or overcome any claim for public officer immunity from North Carolina common law claims against Junaluska, and he is liable in his official capacity for his negligent acts alleged herein.

17. Defendant Kaitlyn Bradley (hereinafter "Bradley") at all times relevant hereto was employed by Hall as a Deputy Sheriff and is being sued in her official and individual capacity. The surety bond, risk pool or commercial insurance obtained by Hall, and the statutory duty referred to in the previous paragraphs, waive or overcome any claim for public officer immunity from North Carolina common law claims against Bradley and she is liable in her official capacity for her negligent acts alleged herein.

18. Defendant Justin Nicholson (hereinafter "Nicholson") at all time relevant hereto was employed by Hall as a Deputy Sheriff and is being sued in his official and individual capacity. The surety bond, risk pool or commercial insurance obtained by Hall, and the statutory duty referred to in the previous paragraphs, waive or overcome any claim for public officer immunity from North Carolina common law claims against Nicholson, and he is liable in his official capacity for his negligent acts alleged herein.

19. Defendant Kayla Elliott (hereinafter "Elliott") at all times relevant hereto was employed by Hall as a Deputy Sheriff and is being sued in her official and individual capacity. The surety bond, risk pool or commercial insurance obtained by Hall, and the statutory duty referred to in the previous paragraphs, waive or overcome any claim for public officer immunity from North Carolina common law claims against Elliott and she is liable in her official capacity for her negligent acts alleged herein.

20. To the extent Defendants McCoy, Parris, Watson, McMullen, Couvillon, Collini, Junaluska, Bradley, Nicholson, or Elliott assert public officer immunity, they are additionally being sued individually for conduct outside the scope of their authority and for malicious, willful, and wanton disregard for the rights and safety of Decedent, including failing to provide appropriate medical and/or mental health services, failing to notify hospital medical staff that Decedent had attempted suicide, failing to keep the enhanced and necessary surveillance of Decedent in compliance with 10A NCAC 14 J .0601, and by placing Decedent for detention in a room which lacked required surveillance capabilities to monitor Decedent and provide for her safety.

21. Such conduct violates Defendants' statutory duty under NCGS 153A-224 to ensure continuous supervision of inmates, including the Decedent, and to be at all times informed of the prisoner's general health and emergency medical needs and therefore pierces the shield of public officer immunity.

22. Defendants are a "person" acting under color of law for the purposes of 42 U.S.C. Section 1983 and are being sued for violating the Fourteenth Amendment rights of the Decedent in failing to provide adequate and necessary medical and mental health care while in pretrial custody and failing to provide adequate surveillance for her safety.

23. The actions and omissions of Defendants, including Hall, were so outrageous as to shock the conscience of the community and violated Decedent's right to substantive due process.

24. Defendants are also sued under state law for the wrongful death of the Decedent as they owed a duty of care to the Decedent to provide for her safety and violated the applicable standard of care.

25. This Court has jurisdiction over the subject matter of this actions pursuant to 28 U.S.C. section 1331, 1343 and 1367.

# F A C T S

26. The foregoing paragraphs of this Complaint, 1-25 are incorporated by reference as if fully restated herein.

27. On January 16, 2019, at approximately 9:15 AM Officer Parris responded to a domestic call at the residence of Joel Rice and was advised that Decedent had attempted to break into the house and attempted to assault Lindsey Heller and her child.

28. Heller advised Parris that Decedent appeared to be "high" on drugs as she did not flinch when Heller repeatedly slammed the door on her hands and fingers.

29. Parris arrived and immediately noticed Decedent smelled of alcohol.

30. Decedent initially resisted arrest and assaulted Parris but was ultimately handcuffed by Parris and placed in the back seat of his patrol car with his K-9 partner.

31. Parris then went inside the residence to obtain the statement of the witness and wash blood off his hands.

32. He left Decedent unattended in the back of the patrol car with the K-9 for in excess of 10 minutes while inside the Rice residence.

33. While she was handcuffed and locked in the back of the patrol car, Decedent used a cigarette lighter and a one dollar bill, which Parris had failed to secure, to set her clothes and the seat of the patrol car on fire in an apparent attempt to commit suicide.

34. Upon exiting the Rice residence Parris observed the fire in the patrol car, removed Decedent from the car, and extinguished the flames.

35. Parris filed criminal charges against the Decedent for intentionally setting the fire to the vehicle and intentionally assaulting a law enforcement animal due to the fire she started while in the back seat of Parris's patrol car.

36. Back up officers, including Deputy Ernest Scherman, arrived to assist Parris, who also observed or witnessed the apparent alcohol use and/or effects upon the Decedent and her

5

apparent impairment.

37. Decedent was taken to Harris Regional Hospital Emergency Room for medical care due to her hand injury and the apparent alcohol use which had been witnessed by Deputies Parris and Scherman.

38. At all times during her medical care Decedent was accompanied by Deputy Watson who had been made aware she had attempted suicide by setting herself on fire while handcuffed in the back seat of Parris's locked patrol car with no means to escape as well as her assault on Parris.

39. At all times Deputy Watson had direct communications with the medical providers as the hospital staff noted the "historian" was listed as "police" which referred to Deputy Watson who had a duty to ensure the medical providers had accurate information.

40. When Decedent underwent a Self-Harm Assessment at the hospital, which included questions including, "Do you have thoughts to harm or kill yourself?", "Have you recently had thoughts of harming or killing others?", "Are you here because you tried to hurt yourself?", the Decedent responded "no" to such questions.

41. Decedent's responses were known by Watson to be not true as he was aware she had set herself on fire while handcuffed in the back of Parris's locked patrol car and had assaulted Deputy Parris and the K9 prior to her evaluation.

42. Watson failed to accurately report Decedent's erratic and suicidal behavior of setting herself on fire while handcuffed and locked in the car or her assault of Parris to the medical staff. Such failure to truthfully report Decedent's erratic and suicidal behavior led the medical staff at Harris Regional to determine Decedent was fit for confinement.

43. At approximately 1:30 PM Decedent was taken by Watson to the Jackson County Detention Center for booking and detention and was initially placed in a holding cell.

44. The jail was under the direction and control of Hall and McCoy who were responsible to ensure their officers were properly trained and properly followed all detention statutes and regulations established by the State of North Carolina.

45. During her confinement at the jail, multiple deputies, including McMullen, Couvillon, Collini, Junaluska, Bradley, Nicholson, and Elliott (the "Deputies") had the opportunity to observe and evaluate Decedent and several reported Decedent smelled of alcohol and appeared to be intoxicated or impaired.

46. In addition to her alcohol use and intoxication, the Deputies were aware of Decedent's erratic behavior and suicidal actions of setting herself on fire while handcuffed and locked in the back of Ridge's patrol car and considered her to be a risk of harm to other inmates such that she was segregated from other prisoners.

6

Case 1:20-cv-00057-MR-WCM   Document 1   Filed 02/26/20   Page 6 of 19

47. Between 3:30 and 4:00 PM due to the Deputies knowledge of Decedent's erratic behavior of setting herself on fire and their concerns Decedent might present a harm to other detainees, she was placed by McMullen in the Booking Room/Bond Room.

48. The Booking Room/Bond Room was not designed as a permanent detention facility and therefore failed to comply with normal detention facility requirements, had only one surveillance camera which did not provide for surveillance of the entire room in violation of North Carolina Detention Center regulations.

49. The Booking Room/Bond Room also had a wall mounted telephone with a cord extending several feet from the wall which provided the means for detainees, including Decedent, to hang themselves.

50. At 4:06 PM a Restraining Order was entered by Magistrate Judge Albert Reagan which reported Plaintiff had made threats of suicide. (See Appendix A attached hereto)

51. At approximately 6:15 PM, Parris, met with Decedent in the Booking Room/Bond Room and advised her that she was being charged with 1) simple assault, 2) possession of a stolen vehicle, 3) larceny of a motor vehicle, 4) breaking and entering, 5) assault on a governmental official, 6) intentional burning of government property, 7) intentional assault on an assistance animal, and 8) violation of a domestic violence order.

52. At the same time Parris delivered a copy of the Restraining Order, which reported the Decedent has made threats to commit suicide, then left Decedent unattended.

53. At approximately 6:17 PM, after being advised that she would not be provided bail and would be retained in the jail, Decedent went to the back of the Booking Room, outside of the view of the single surveillance camera, and wrapped the phone cord around her neck and sat down to hang herself.

54. Decedent remained alive until at least 6:27 PM when it is believed she became unconscious and stopped breathing.

55. Detention Center Deputies did not check on the Decedent until 7:06 PM when she was found by Couvillon with no pulse and the phone cord wrapped around her neck.

56. Decedent was resuscitated by the emergency medical staff and transported to Harris Regional Hospital and then transferred to Memorial Mission Hospital, where she later died on January 18, 2019 from anoxic brain injury and multiple organ failure.

57. Prior to the suicide death of the Decedent in January 2019, the Jackson County Detention Facility had experienced the suicide of inmate Chuckie Moose in November 2014 and the suicide of Steve Ross in 2015 for which North Carolina jail inspectors ruled the Detention officers had violated North Carolina Detention regulations.

# FIRST CAUSE OF ACTION
## WRONGFUL DEATH

## DEFENDANTS HALL, PARRIS, WATSON, McMULLEN, COUVILLON, COLLINI, JUNALUSKA, BRADLEY, NICHOLSON & ELLIOTT

58. The foregoing paragraphs of this Complaint, 1-57 are incorporated by reference as if fully restated herein.

59. NCGS 153A-224 is a safety statute expressly enacted to protect the detainees, including Decedent, whose liberty has been taken and who are confined in a local detention facility, and imposes upon Defendants a duty to ensure detainees, including Decedent are protected from harm and provided necessary medical care.

60. The Jackson County Detention Facility is a local confinement facility for purposes of NCGS 153A-224.

61. North Carolina Detention Regulations require enhanced surveillance and increased direct observation of four-times-per-hour of inmates who display behaviors of intoxication, smelling of alcohol, erratic behaviors, suicide attempt, or a previous record of mental illness. 10A NCAC 14J .0601(b) and 10A NCAC 14J .0601(c)

62. Defendants Parris, Watson, McMullen, Couvillon, Collini, Junaluska, Bradley, Nicholson, and Elliott violated their statutory duties and were negligent as follows:

    a. failing to properly report Decedent's attempted suicide to appropriate medical care providers prior to her confinement to ensure appropriate medical and mental health care could be provided.

    b. failing to ensure appropriate and necessary mental evaluation of the Decedent was undertaken in light of her known suicide attempt while in Parris's patrol car,

    c. detaining Decedent in the "booking room" which had a wall mounted telephone with a cord which extended from the wall providing the means to hang herself after knowing of or being made aware of her suicide attempt earlier in the day,

    d. detaining Decedent in the "booking room" due to her known suicide attempt when such room was known have only one camera and lacked the necessary surveillance capabilities required by 10A NCAC 14J .0101 et seq.

    e. failing to maintain necessary and appropriate enhanced surveillance of the Decedent four times per hour in light of her known suicide attempt, alcohol use, and apparent intoxication in violation of North Carolina Detention Regulations including 10A NCAC 14J .0601

8

     f. failing to provide custodial supervision and secure appropriate medical and mental health care in violation of NCGS 153A-224.

63. Their breach of the affirmative duty imposed by a safety statute constituted negligence per se.

64. Their breaches of their statutory duties pursuant to NCGS 153A-224 to provide continuous custodial supervision of detainees and to secure necessary medical and mental health care precludes the application of governmental immunity.

65. As a proximate result of the negligence actions of Defendants Parris, Watson, McMullen, Couvillon, Collini, Junaluska, Bradley, Nicholson, and Elliott, the Decedent was able to hang herself and commit suicide while in their custody, which took over 10 minutes to complete, during which she suffered agonizing pain and emotional distress until her death.

66. Hall is liable, under the doctrine of respondent superior, both under common law and by statute for the negligent actions and omissions of Defendants Parris, McMullen, Watson, Couvillon, Collini, Junaluska, Bradley, Nicholson, and Elliott, which led to the death of the Decedent.

67. Hall's duty is to operate the county jail in a safe manner which is a non-delegable duty under NCGS 162-22 & 24.

68. Defendants Parris, Watson, McMullen, Couvillon, Collini, Junaluska, Bradley, Nicholson, and Elliott are individually sued as some of their actions were taken outside the scope of their authority, including their systematic failure to perform necessary enhanced surveillance of the Decedent, after they had prior knowledge of her alcohol use, apparent intoxication and her suicide attempt earlier in the day, until she was found unconscious with a phone cord wrapped around her neck, which such actions demonstrated willful, wanton, and reckless disregard for her safety. Such wanton and reckless disregard for a pre-trial detainee, including the Decedent, pierces the shield of public officer immunity.

69. As a result of Defendants Parris, Watson, McMullen, Couvillon, Collini, Junaluska, Bradley, Nicholson and Elliott's willful, wanton, reckless, and negligent conduct, Decedent was able to hang herself on January 16, 2019 while in the custody of the Jackson County Detention Center which resulted in death on January 18, 2019.

70. In light of Decedent's known alcohol use, apparent intoxication, and suicide attempt while in custody of Parris earlier in the day, Defendants knew or should have known Decedent was a risk to commit suicide.

71. Plaintiff, in his capacity as Administrator of the Estate of Melissa Rice, is entitled to recover from Defendants jointly and severally, all damages for wrongful death allowed pursuant to NCGS 28A-282(b), including but not limited to the loss of Decedent's love,

comfort, and society as well as her pain and suffering which she experienced before her death.

72. Plaintiff also seeks and is entitled punitive damages against the Defendants, pursuant to Chapter 1D and NCGS 28A-18-2(b)(5), based on their actual malice toward Decedent and their wanton and reckless disregard for her safety.

## SECOND CAUSE OF ACTION
## FAILURE TO ADEQUATELY TRAIN AND SUPERVISE

## DEFENDANTS HALL AND McCOY

73. The foregoing paragraphs of this Complaint 1-72 are incorporated by reference as if fully restated herein.

74. At all times relevant hereto Defendant Hall had a non-delegable duty to maintain adequate supervision of the jail under NCGS 162-24.

75. Upon information and belief, Hall assigned McCoy to oversee the operation of the Jackson County Detention Center, and as such McCoy had a duty to insure the staff of the jail, were adequately trained and supervised to provide for all necessary medical care and safety of all inmates, including Decedent.

76. Hall and McCoy were negligent in failing to properly train and supervise the staff of the jail, including Defendants McMullen, Couvillon, Collini, Junaluska, Bradley, Nicholson, and Elliott as to the proper evaluation of the Decedent's mental health and safety needs, the proper detention area in light of her known suicidal attempt, and the proper use of enhanced surveillance as required by 10 NCAC 14J .0601 in light of Decedent's known alcohol use, intoxication, and suicide attempt.

77. As a result of the negligence of Hall and McCoy, Defendants McMullen, Couvillon, Collini, Junaluska, Bradley, Nicholson, and Elliott failed to provide the necessary mental health care and enhanced supervision as required by 10 NCAC 14J .0601 in spite of being aware of the alcohol use, apparent intoxication, and prior suicide attempt, which resulted the death of Decedent while in the custody of the Jackson County Detention Center.

78. Plaintiff also seeks and is entitled punitive damages against the Defendants, pursuant to Chapter 1D and NCGS 28A-18-2(b)(5), based on their actual malice toward Decedent and their wanton and reckless disregard for her safety.

# THIRD CAUSE OF ACTION
# VIOLATION OF 42 U.S.C. 1983
# FOURTEENTH AMENDMENT VIOLATIONS

79. The foregoing paragraphs of this Complaint 1-78 are incorporated by reference as if fully restated herein.

80. All Defendants are "persons" and their actions and omissions complained of herein were taken under color of North Carolina law for purposes of 42 U.S.C. Section 1983.

81. The rights of pre-trial detainees, including the Decedent, and the conduct of Defendants Hall, McCoy, McMullen, Couvillon, Collini, Junaluska, Nicholson, Elliott, and Bradley are governed by the due process clause of the Fourteenth Amendment, which sets the standard of objective reasonableness.

82. The actions of Defendants in failing to fully and adequately provide truthful and necessary medical information, including the known suicide attempt by Decedent to emergency medical personnel to ensure a proper psychological evaluation was completed, and their failure to provide unstable and emotionally distressed detainees, including the Decedent with four-times-per-hour direct observation and watch as required by North Carolina law, including 10A NCAC 14J. 0601, violated the standard of reasonableness.

83. Defendants Hall and McCoy's failure to train and supervise their jail staff, including the other Defendants named herein, in recognizing and properly responding to Decedent's alcohol use, apparent intoxication, unstable behavior, and suicide attempt also violated the standard of objective reasonableness.

84. Defendant Hall is sued in his official capacity for this Fourteenth Amendment violation.

85. The actions described herein by the Defendant Parris, Watson, McMullen, Couvillon, Collini, Junaluska, Nicholson, Elliott, and Bradley violated the Fourteenth Amendment standard of deliberate indifferences, including,

    a. failing to recognize and properly report to emergency medical staff of Decedent's suicide attempt during her pre-detention medical evaluation to ensure she received the necessary and appropriate mental health evaluation prior to her detention.

    b. failing to recognize Decedent's known suicide attempt and provide for necessary and required enhanced surveillance four-times-per-hour due to her known alcohol use, apparent intoxication, and suicide attempt.

    c. detaining Decedent, who was known to have attempted suicide earlier in the day, in the booking room which had an exposed phone cord available which provided the means to commit suicide, as well as not having the necessary and required surveillance camera in violation of 10 NCAC 14J.0101.

11

86. Those actions violated the Fourteenth Amendment standard of deliberative indifference to the rights of the Decedent.

87. The Decedent was detained under conditions which posed a substantial risk of serious harm or death and Defendants McMullen, Couvillon, Collini, Junaluska, Bradley, Nicholson and Elliott knew and disregarded those risks to Decedent's health and safety, including placing her in a detention location which did not meet state regulations which permitted her to wrap the phone cord around her neck, and hang herself, which violated Decedent's Fourteenth Amendment rights.

88. Alternatively, these actions and omissions showed reckless disregard and open contempt for Decedent's safety and well-being by Defendants, which satisfy the deliberate indifference standard.

89. Defendants Parris, Watson, McMullen, Couvillon, Collini, Junaluska, Bradley, Nicholson, and Elliott had actual and constructive knowledge of Decedent's alcohol use, apparent intoxication and suicidal behaviors, including setting herself on fire while handcuffed in the back of a locked patrol car with no means to escape, and were deliberately indifferent to Decedent's need for a mental health assessment and enhanced surveillance but failed to taken action.

90. Defendants Parris, Watson, McMullen, Couvillon, Collini, Junaluska, Bradley, Nicholson, and Elliott are sued individually under 42 U.S.C. Section 1983 for these Fourteenth Amendment violations.

91. The actions of these same individual Defendants also violated the standards of common decency as to shock the conscience of the community and thus violated Decedent's rights to substantive due process also protected by the Fourteenth Amendment.

92. As a result of these violations by Defendants Parris, Watson, McMullen, Couvillon, Collini, Junaluska, Bradley, Nicholson, and Elliott the Decedent suffered a slow and agonizing death over the course of 10 minutes when left to hang herself in the booking room, and was thereafter resuscitated and thereby endured several additional days of agonizing pain and suffering before her death on January 18, 2019.

93. Plaintiff seeks and is entitled to compensatory damages as allowed by 42 U.S.C. Section 1983 and NCGS 28A-18-2(b)(5) against Defendants Parris, Watson, McMullen, Couvillon, Collini, Junaluska, Bradley, Nicholson, and Elliott, including but not limited to damages for pain and suffering and humiliation which Decedent experienced before her death.

94. Plaintiff also seeks and is entitled to punitive damages from Defendants Parris, Watson, McMullen, Couvillon, Collini, Junaluska, Bradley, Nicholson, and Elliott in their individual capacities as allowed under 42 U.S.C. 1983 to due to these Defendants deliberate and reckless indifference to the Decedent's federally protected rights.

95. Defendant Hall is also liable as the supervisor and director of the jail, due to the actions of the deputies at the jail of failing to notify emergency medical staff of the suicide attempt of the Decedent to ensure she received the appropriate psychological evaluation and treatment, not properly training and supervising the jail's detention staff on how to attend to the medical and psychological needs of detainees, including the Decedent, who was known to have consumed alcohol, was apparently intoxicated, and had attempted suicide immediately prior to detainment, and failing to place Decedent on the required four-times-per-hour direct observation as required by North Carolina law. There is a causal link to between these willful and wanton indifference to these jail processes, guarding training, and detainee monitoring deficiencies and the handling of the death of Decedent while in the Jackson County Detention Facility.

96. Defendant McCoy is also liable as the supervisor of Defendants McMullen, Couvillon, Collini, Junaluska, Bradley, Nicholson, and Elliott, as he implicitly authorized, approved of, and knowingly acquiesced in their deliberate indifference to Decedent's federally protected rights.

## FOURTH CAUSE OF ACTION
## VIOLATION OF NCGS 162-55

97. The foregoing paragraphs of this Complaint, 1-96 are incorporated by reference as if fully restated herein.

98. The actions and omissions alleged herein by Defendants Hall, McCoy, Parris, Watson, McMullen, Couvillon, Collini, Junaluska, Nicholson, Elliott, and Bradley showed reckless indifference and thoughtful disregard for the safety of the Decedent and their actions are equivalent to criminal neglect, and as a result Plaintiff, on behalf of the Estate, is entitled to recovery treble the compensatory damages awarded, pursuant to NCGS 162-55.

WHEREOF, Plaintiff as Administrator for the Estate of Melissa Rice hereby prays the Court as follows:

1. For a trial by jury on all issues so triable.

2. For a judgement in excess of $1,000,000 jointly and severally against Defendant Hall in his official capacity under the principles of respondent superior, and against Defendants McCoy, Parris, Watson, McMullen, Couvillon, Collini, Junaluska, Bradley, Nicholson, and Elliott, for all damages permitted for the wrongful death of Decedent under N.G.C.S. 28A-18-2(b), including punitive damages.

3. For judgement in excess of $1,000,000 jointly and severally against Defendant Hall in his official capacity, and against Defendants McCoy, Parris, Watson, McMullen, Couvillon, Collini, Junaluska, Bradley, Nicholson, and Elliott, in their individual capacities for their violations of 42 U.S.C. 1983 for compensatory damages.

4. For judgement in excess of $1,000,000 against Parris, Watson, McMullen, Couvillon, Collini, Junaluska, Bradley, Nicholson and Elliott, in their individually capacities for their violations of 42 U.S.C. 1983 for punitive damages.

5. For an award of treble the compensatory damages against Defendants Hall, McCoy, Parris, Watson, McMullen, Couvillon, Collini, Junaluska, Bradley, Nicholson, and Elliott under N.C.G.S. 162-55.

6. An Order that Defendants pay Plaintiff's costs as allowed under 42 U.S.C. section 1988, including reasonable attorney fees.

7. And for such other and further relief as the Court deem equitable and just.

Respectfully submitted this the ___ day of February 2020.

_____
Thomas F. Ramer, N.C. Bar # 12650
Ganly & Ramer, PLLC
Attorneys for the Plaintiff
61 N. Market Street
Asheville, N.C. 28801
828-252-4491
Fax: 828-252-9508
tom@ganlyramer.com

# MAGISTRATES TEMPORARY EXPARTE ORDER

MAGISTRATES TEMPORARY ORDER WAS GRANTED ON

1/16/19

TO BE SENT UP FOR <u>JUDGES</u> EXPARTE ON

1/17/19

| Case No. 19CVD52 | EX PARTE |
| --- | --- |
| Court: General Court of Justice, District Court Division | DOMESTIC VIOLENCE ORDER OF PROTECTION |
| County: Jackson    NORTH CAROLINA | G.S. 50B-2, -3, -3.1 |

**FILED 2019 JAN 16 P 4:06  JACKSON CO., C.S.C.  BY____**

### PETITIONER/PLAINTIFF
First: Joel   Middle: ___   Last: Rice

### PETITIONER/PLAINTIFF IDENTIFIERS
Date Of Birth Of Petitioner: ___

And/or on behalf of minor family member(s): (List Name And DOB)

Other Protected Persons/DOB:

### VERSUS

### RESPONDENT/DEFENDANT
First: Melissa   Middle: ___   Last: Rice

Relationship to Petitioner:
- [ ] spouse
- [x] former spouse
- [ ] unmarried, of opposite sex, currently or formerly living together
- [ ] unmarried, have a child in common
- [ ] of opposite sex, currently or formerly in dating relationship
- [ ] current or former household member
- [ ] parent  [ ] grandparent  [ ] child  [ ] grandchild

Respondent's/Defendant's Address: unlisted

**CAUTION:** [ ] Weapon Involved

### RESPONDENT/DEFENDANT IDENTIFIERS
| Sex | Race | DOB | HT | WT |
| --- | --- | --- | --- | --- |
| F | W | 11-22-69 | 5'8" | 115 |

| Eyes | Hair | Social Security Number |
| --- | --- | --- |
| Brown | Red | |

| Drivers License No. | State | Expiration Date |
| --- | --- | --- |

Distinguishing Features:

### THE COURT HEREBY FINDS THAT:
This matter was heard by the undersigned  [ ] district court judge.  [x] magistrate. The court has jurisdiction over the subject matter.

Additional findings of this order are set forth on Page 2.

### THE COURT HEREBY ORDERS THAT:
[x] The above named Respondent/Defendant shall not commit any further acts of domestic violence or make any threats of domestic violence (G.S. 50B-1).

[x] The above named Respondent/Defendant shall have no contact with the Petitioner/Plaintiff. No contact includes any defendant-initiated contact, except through an attorney, direct or indirect, by means such as telephone, personal contact, email, pager, gift-giving or telefacsimile machine. [05]

Additional terms of this order are as set forth on Pages 3 and 4.

The terms of this order shall be effective until **January 17, 2019 @ 9:00 am**

### WARNINGS TO THE RESPONDENT/DEFENDANT:
This order shall be enforced, even without registration, by the courts of any state, the District of Columbia, and any U.S. Territory, and may be enforced by Tribal Lands (18 U.S.C. Section 2265). Crossing state, territorial, or tribal boundaries to violate this order may result in federal imprisonment (18 U.S.C. Section 2262).

This order will be enforced anywhere in North Carolina.

Only the Court can change this order. <u>The plaintiff cannot give you permission to violate this order.</u>

See additional warnings on Page 4.

(Over)

AOC-CV-304, Page 1 of 5, Rev. 12/15
© 2015 Administrative Office of the Courts

**ADDITIONAL FINDINGS**

1. As indicated by the check block under Respondent/Defendant's name on Page 1, the parties are or have been in a personal relationship.

[✓] 2. That on *(date of most recent conduct)* 1-16-19, the defendant
   [✓] a. [✓] attempted to cause  [✓] intentionally caused  bodily injury to  [✓] the plaintiff  [ ] the child(ren) living with or in the custody of the plaintiff
   [✓] b. placed in fear of imminent serious bodily injury  [✓] the plaintiff  [ ] a member of the plaintiff's family  [✓] a member of the plaintiff's household
   [✓] c. placed in fear of continued harassment that rises to such a level as to inflict substantial emotional distress  [✓] the plaintiff  [ ] a member of plaintiff's family  [✓] a member of plaintiff's household
   [ ] d. committed an act defined in G.S. 14-  [ ] 27.21 (1st deg. rape)  [ ] 27.22 (2nd deg. rape)  [ ] 27.26 (1st deg. se  [ ] 27.27 (2nd deg. sexual off.)  [ ] 27.33 (sexual battery)  [ ] 27.31 (sexual activity by substitute parent) against  [ ] the plaintiff  [ ] a child(ren) living with or in the custody of the plaintiff by *(describe defendant's conduct)*

[ ] 3. The defendant is in possession of, owns or has access to firearms, ammunition, and gun permits described below. *(Describe all firearms, ammunition, gun permits and give identifying number(s) if known, and indicate where defendant keeps firearms)*

[✓] 4. The defendant
   [ ] a. [ ] used  [ ] threatened to use  a deadly weapon against the  [ ] plaintiff  [ ] minor child(ren) residing with or in the custody of the plaintiff
   [ ] b. has a pattern of prior conduct involving the  [ ] use  [ ] threatened use  of violence with a firearm against persons
   [ ] c. made threats to seriously injure or kill the  [ ] plaintiff  [ ] minor child(ren) residing with or in the custody of the plaintiff
   [✓] d. made threats to commit suicide
   [ ] e. inflicted serious injuries upon the  [ ] plaintiff  [ ] minor child(ren) residing with or in the custody of the plaintiff in that *(state facts)*:

[ ] 5. The parties are the parents of the following child(ren) under the age of eighteen (18). The child(ren) are presently in the physical custody of the  [ ] plaintiff.  [ ] defendant. The plaintiff has submitted an "Affidavit As To Status Of Minor Child."
   **NOTE TO JUDGE:** *A copy of AOC-CV-609 for each child must be attached to the order.*

| Name | Sex | Date Of Birth | Name | Sex | Date Of Birth |
|---|---|---|---|---|---|
|  |  |  |  |  |  |
|  |  |  |  |  |  |

[ ] 6. The minor child(ren) is exposed to a substantial risk of physical or emotional injury or sexual abuse in that:

[ ] 7. It is in the best interest of and necessary for the safety of the minor child(ren)  [ ] that defendant stay away from the minor child(ren)  [ ] that the defendant return the minor child(ren) to plaintiff  [ ] and that the defendant not remove the minor child(ren) from plaintiff  in that:

[ ] 8. *(Check block only if plaintiff is entitled to physical care of child(ren).)* It is in the best interest of the minor child(ren) that defendant have contact with the minor child(ren) in that:

[ ] 9. The  [ ] defendant  [ ] plaintiff is presently in possession of the parties' residence at _____

AOC-CV-304, Page 2 of 5, Rev. 12/15           (Over)
© 2015 Administrative Office of the Courts

## RETURN OF SERVICE

I certify that this Summons and a copy of the complaint ☒ and Temporary No-Contact Order ☒ and Notice Of Hearing on a No-Contact Order were received and served as follows:

### DEFENDANT

| Date Served | Time Served | | Name Of Defendant |
|---|---|---|---|
| 1/16/19 | 6:15 | ☐ AM ☒ PM | Melissa Middleton Lica |

☒ By delivering to the defendant named above a copy of the summons and complaint.

☐ By leaving a copy of the summons and complaint at the dwelling house or usual place of abode of the defendant named above with a person of suitable age and discretion then residing therein.

Name And Address Of Person With Whom Copies Left

☐ Defendant WAS NOT served for the following reason:

| Date Received | Signature Of Deputy Sheriff Making Return |
|---|---|
| 1/16/19 | [signature] |
| Date Of Return | Name Of Deputy Sheriff (Type Or Print) |
| 1/16/19 | L. Parris |
| | County Of Sheriff |
| | Jackson |

AOC-CV-521, Side Two, New 12/04
© 2004 Administrative Office of the Courts

| Name Of Defendant | | File No. |
|---|---|---|
| Melissa Rice | | 19CVD52 |

### CERTIFICATION

I certify this order is a true copy.

| Date | Signature Of Clerk | FILED | ☐ Deputy CSC | ☐ Assistant CSC |
|---|---|---|---|---|
| | | | ☐ Clerk of Superior Court | |

### RETURN OF SERVICE

**NOTE:** To be used when Magistrate issues ex parte protective order, and order will be served on defendant separate from the complaint and civil summons. If complaint and summons are served with order, return on summons covers order.

I certify that this Ex Parte Domestic Violence Order of Protection was received and served as follows:

| Date Served | Time Served | | Name Of Defendant |
|---|---|---|---|
| 1/16/19 | 6:15 | ☐ AM ☒ PM By | Melissa Middleton Rice |

☒ By delivering to the defendant named above a copy of the order.

☐ By leaving a copy of the order at the dwelling house or usual place of abode of the defendant named above with a person of suitable age and discretion then residing therein.

Name And Address Of Person With Whom Copies Left

☐ Other manner of service on the defendant (specify)

☐ Defendant WAS NOT served for the following reason.

| Date Received | Signature Of Deputy Sheriff Making Return |
|---|---|
| 1/16/19 | [signature] |
| Date Of Return | Name Of Deputy Sheriff Making Return (type or print) |
| 1/16/19 | R. Parris |
| | County Of Sheriff |
| | Jackson |

AOC-CV-304, Page 5 of 5, Rev. 12/15
© 2015 Administrative Office of the Courts