**UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF NORTH CAROLINA
ASHEVILLE DIVISION
1:20-cv-57**

| | |
|---|---|
| **MATTHEW DILLARD, Administrator** ) <br> **of the Estate of Melissa Rice,** ) <br> **Plaintiff,** ) <br> v. ) <br> **CHIP HALL, in his official capacity as** ) <br> **Sherriff of Jackson County; WESTERN** ) <br> **SURETY COMPANY, surety for the** ) <br> **Sheriff; JOHN BUCHANAN, in his** ) <br> **official and individual capacity;** ) <br> **SHEILA AKINS, in her official capacity** ) <br> **and individual capacity,** ) <br> **RIDGE PARRIS in his official** ) <br> **and individual capacity; STEPHEN** ) <br> **WATSON, in his official and individual** ) <br> **capacity; ANIYAH McMULLEN,** ) <br> **in her official and individual capacity,** ) <br> **EMILY COUVILLON, in her official** ) <br> **and individual capacity;** ) <br> **SHONDRA COLLINI, in her official** ) <br> **and individual capacity;** ) <br> **JUSTIN NICHOLSON, in official and** ) <br> **individual capacity, and KAYLA** ) <br> **ELLIOTT, in her official and** ) <br> **Individual capacity; KAITLYN** ) <br> **BRADLEY, in her official and** ) <br> **Individual capacity.** ) <br> **Defendants** ) <br> ) | **AMENDED COMPLAINT** <br><br> **WRONGFUL DEATH** <br> **VIOLATION OF 42 U.S.C. 1983** |

NOW COMES the Plaintiff, on behalf of the Estate of Melissa Rice, with consent of the Defendants, does hereby complain of the Defendants and does hereby allege:

1. Plaintiff, Matthew Dillard, a resident of Jackson County, North Carolina, has duly qualified as administrator for the Estate of Melissa Rice (hereinafter "Decedent") who hung herself while in the custody of Defendant Hall and his officers in Jackson County on January 16, 2019, and subsequently died in Buncombe County on January 18 2019.

2. On January 16, 2019, Defendant Hall (hereinafter "Hall") was the elected Sheriff of Jackson Count and charged by statute with control and operation of the Jackson County Detention Center (hereinafter the "jail"). At all times relevant hereto, Hall had custody

1

and control over the jail under NCGS 162-22 and had a non-delegable responsibility for maintaining adequate supervision of the jail pursuant to NCGS 162-24 and was the final policymaker for the jail and its operation for purposes of 42 U.S.C. 1983.

3. On January 16, 2019, Hall had legal obligations pursuant to NCGS 153A-224 to provide continuous and necessary custodial supervision of all detainees in the custody of the jail, including Decedent, and to be at all times informed of the prisoners' general health and emergency needs. He is sued in his official capacity under NCGS 58-76-5 and NCGS 153A-435 as the final policymaker responsible for the negligent and unlawful practices at the jail. These practices include the failure to provide sufficient training to detention center officers to recognize and prevent suicidal actions of detainee, failure to provide decedent with necessary mental health services, and the systematic failure to comply with North Carolina regulations for jails, local confinement centers, and detentions centers promulgated in 10A NCAC 14J .0101 et seq. which resulted in the death of Decedent.

4. Defendant Western Surety Company is a South Dakota company and sued as the Sheriff's surety under NCGS 58-76-5. Western Surety Company issued the statutorily mandated surety bond to cover any injury caused by the neglect or misconduct of the Sheriff or those he employees. On January 16, 2019, Sheriff Hall was obligated under state law to obtain and maintain said surety bond and by doing so, waived sovereign immunity as to the claims in this matter, at least to the extent of the bond.

5. Upon information and belief, on January 16, 2019, Hall has waived governmental or sovereign immunity from State tort claims in this case pursuant to NCGS 153A-435, by purchasing a surety bond, liability insurance, or participation in a government risk pool, to cover any injuries or deaths caused by the negligent acts or misconduct of Hall or those he employees.

6. NCGS 153A-224 imposes an affirmative duty upon Hall and his jail employees to provide continuous custodial supervision of all persons in their custody and to be at all times informed of the prisoners' general health and medical needs to protect them from injury or death.

7. Violation of the mandatory duty imposed by NCGS 153A-224 is a misdemeanor crime and creates an exception to and precludes the application of the doctrine of governmental immunity to the torts claimed in this action.

8. NCGS 162-55 imposes an affirmative statutory duty upon Hall and his jail employees from doing or causing to be done, any wrong or injury to the prisoners committed to his custody, including Decedent.

9. Violation of the mandatory and statutory duty imposed by NCGS 162-55 is a misdemeanor crime which creates an exception to and precludes the application of, the doctrine of governmental immunity to the torts claimed in this action.

2

10. Defendant John Buchanan (hereinafter "Buchanan") was employed by Sheriff Hall on January 16, 2019, as Captain of the Sheriff's Department and assigned to supervise, oversee, and control the operations of the Jackson County Detention Center, and is being sued in his official capacity for his failure to properly train and supervise his subordinate employees to properly perform mental health and suicide evaluations, and to keep continuous and necessary custodial supervision of Decedent, including failing to keep Decedent under enhanced watch as required by 10A NCAC 14 J .0601 and is being sued in his individual and official capacity for violation of Decedent's Fourteenth Amendment rights.

11. Defendant Sheila Akins (hereinafter "Akins" was employed by Sheriff Hall on January 16, 2019, as Lieutenant with supervisory duties over the Jackson County Detention Center and its staff to supervise, oversee, and control the operations of the Jackson County Detention Center, and is being sued in her official capacity for her failure to properly train and supervise her subordinate employees perform mental health and suicide evaluations, and to keep continuous and necessary custodial supervision of Decedent, including failing to keep Decedent under enhanced watch as required by 10A NCAC 14 J .0601 and is being sued in her individual and official capacity for violation of Decedent's Fourteenth Amendment rights.

12. Defendant Ridge Parris (hereinafter "Parris") at all times relevant hereto was employed by Hall as a Deputy Sheriff and is being sued in his official and individual capacity. The surety bond, risk pool or commercial insurance obtained by Hall, and the statutory duty referred to in the previous paragraphs, waive or overcome any claim for public officer immunity from North Carolina common law claims against Parris, and he is liable in his official capacity for his negligent acts alleged herein.

13. Defendant Stephen Watson (hereinafter "Watson") at all times relevant hereto was employed by Hall as a Deputy Sheriff and is being sued in his official and individual capacity. The surety bond, risk pool or commercial insurance obtained by Hall, and the statutory duty referred to in the previous paragraphs, waive or overcome any claim for public officer immunity from North Carolina common law claims against Watson, and he is liable in his official capacity for his negligent acts alleged herein.

14. Defendant Aniyah McMullen (hereinafter "McMullen") at all times relevant hereto was employed by Hall as a Deputy Sheriff and is being sued in her official and individual capacity. The surety bond, risk pool or commercial insurance obtained by Hall, and the statutory duty referred to in the previous paragraphs, waive or overcome any claim for public officer immunity from North Carolina common law claims against McMullen, and she is liable in her official capacity for her negligent acts alleged herein.

15. Defendant Emily Couvillon (hereinafter "Couvillon") at all times relevant hereto was employed by Hall as a Deputy Sheriff and is being sued in her official and individual capacity. The surety bond, risk pool or commercial insurance obtained by Hall, and the statutory duty referred to in the previous paragraphs, waive or overcome any claim for

public officer immunity from North Carolina common law claims against Couvillon, and she is liable in her official capacity for her negligent acts alleged herein.

16. Defendant Shondra Collini (hereinafter "Collini") at all times relevant hereto was employed by Hall as a Deputy Sheriff and is being sued in her official and individual capacity. The surety bond, risk pool or commercial insurance obtained by Hall, and the statutory duty referred to in the previous paragraphs, waive or overcome any claim for public officer immunity from North Carolina common law claims against Collini and she is liable in her official capacity for her negligent acts alleged herein.

17. Defendant Kaitlyn Bradley (hereinafter "Bradley") at all times relevant hereto was employed by Hall as a Deputy Sheriff and is being sued in her official and individual capacity. The surety bond, risk pool or commercial insurance obtained by Hall, and the statutory duty referred to in the previous paragraphs, waive or overcome any claim for public officer immunity from North Carolina common law claims against Bradley and she is liable in her official capacity for her negligent acts alleged herein.

18. Defendant Justin Nicholson (hereinafter "Nicholson") at all time relevant hereto was employed by Hall as a Deputy Sheriff and is being sued in his official and individual capacity. The surety bond, risk pool or commercial insurance obtained by Hall, and the statutory duty referred to in the previous paragraphs, waive or overcome any claim for public officer immunity from North Carolina common law claims against Nicholson, and he is liable in his official capacity for his negligent acts alleged herein.

19. Defendant Kayla Elliott (hereinafter "Elliott") at all times relevant hereto was employed by Hall as a Deputy Sheriff and is being sued in her official and individual capacity. The surety bond, risk pool or commercial insurance obtained by Hall, and the statutory duty referred to in the previous paragraphs, waive or overcome any claim for public officer immunity from North Carolina common law claims against Elliott and she is liable in her official capacity for her negligent acts alleged herein.

20. To the extent Defendants Buchanan, Akins, Parris, Watson, McMullen, Couvillon, Collini, Bradley, Nicholson, or Elliott assert public officer immunity, they are additionally being sued individually for conduct outside the scope of their authority and for malicious, willful, and wanton disregard for the rights and safety of Decedent, including failing to provide appropriate medical and/or mental health services, failing to notify hospital medical staff that Decedent had attempted suicide, failing to keep the enhanced and necessary surveillance of Decedent in compliance with 10A NCAC 14 J .0601, and by placing Decedent for detention in a room which lacked required surveillance capabilities to monitor Decedent and provide for her safety.

21. Such conduct violates Defendants' statutory duty under NCGS 153A-224 to ensure continuous supervision of inmates, including the Decedent, and to be at all times informed of the prisoner's general health and emergency medical needs and therefore pierces the shield of public officer immunity.

4

22. Defendants are a "person" acting under color of law for the purposes of 42 U.S.C. Section 1983 and are being sued for violating the Fourteenth Amendment rights of the Decedent in failing to provide adequate and necessary medical and mental health care while in pretrial custody and failing to provide adequate surveillance for her safety.

23. The actions and omissions of Defendants, including Hall, were so outrageous as to shock the conscience of the community and amount to deliberate indifference in violating Decedent's right civils right guaranteed by the U.S. Constitution.

24. Defendants are also sued under state law for the wrongful death of the Decedent as they owed a duty of care to the Decedent to provide for her safety and violated the applicable standard of care.

25. This Court has jurisdiction over the subject matter of this actions pursuant to 28 U.S.C. section 1331, 1343 and 1367.

## FACTS

26. The foregoing paragraphs of this Complaint, 1-25 are incorporated by reference as if fully restated herein.

27. On January 16, 2019, at approximately 9:15 AM Officer Parris responded to a domestic call at the residence of Joel Rice and was advised that Decedent had attempted to break into the house and attempted to assault Lindsey Heller and her child.

28. Heller advised Parris that Decedent appeared to be "high" on drugs as she did not flinch when Heller repeatedly slammed the door on her hands and fingers.

29. Parris arrived and immediately noticed Decedent smelled of alcohol.

30. Decedent initially resisted arrest and assaulted Parris but was ultimately handcuffed by Parris and placed in the back seat of his patrol car with his K-9 partner.

31. Parris then went inside the residence to obtain the statement of the witness and wash blood off his hands.

32. He left Decedent unattended in the back of the patrol car with the K-9 for in excess of 10 minutes while inside the Rice residence.

33. While she was handcuffed and locked in the back of the patrol car, Decedent used a cigarette lighter and a one dollar bill, which Parris had failed to secure, to set her clothes and the seat of the patrol car on fire in an apparent attempt to commit suicide.

34. Upon exiting the Rice residence Parris observed the fire in the patrol car which was intense enough to melt the plexiglass divider with the law enforcement dog. He removed Decedent from the car, extinguished the flames and checked the dog.

5

35. Parris filed criminal charges against the Decedent for intentionally setting the fire to the vehicle and intentionally assaulting a law enforcement animal due to the fire she started while in the back seat of Parris's patrol car.

36. Back up officers, including Deputy Ernest Scherman, arrived to assist Parris, who also observed or witnessed the apparent alcohol use and/or effects upon the Decedent and her apparent impaired state.

37. Decedent was taken to Harris Regional Hospital Emergency Room for medical care due to her hand injury and the apparent alcohol use which had been witnessed by Deputies Parris and Scherman.

38. At all times during her medical care Decedent was accompanied by Deputy Watson who had been made aware she had attempted suicide by setting herself on fire while handcuffed in the back seat of Parris's locked patrol car with no means to escape as well as her assault on Parris.

39. At all times Deputy Watson had direct communications with the medical providers as the hospital staff noted the "historian" was listed as "police" which referred to Deputy Watson who had a duty to ensure the medical providers had accurate information.

40. When Decedent underwent a Self-Harm Assessment at the hospital, which included questions including, "Do you have thoughts to harm or kill yourself?", "Have you recently had thoughts of harming or killing others?", "Are you here because you tried to hurt yourself?", the Decedent responded "no" to such questions.

41. Decedent's responses were known by Watson to be not true as he was aware she had set herself on fire while handcuffed in the back of Parris's locked patrol car and had assaulted Deputy Parris and the K9 prior to her evaluation.

42. Watson failed to accurately report Decedent's erratic and suicidal behavior of setting herself on fire while handcuffed and locked in the car or her assault of Parris to the medical staff. Such failure to truthfully report Decedent's erratic and suicidal behavior led the medical staff at Harris Regional to determine Decedent was fit for confinement.

43. At approximately 1:30 PM Decedent was taken by Watson to the Jackson County Detention Center for booking where she was initially processed by Defendant McMullen.

44. Decedent had previously been arrested on January 7, 2019 and was booked by McMullen at which time Decedent reported she "will have withdraw from alcohol". This information was maintained in the computer records available to McMullen and other Defendants on January 16, 2019.

45. At the time of initial booking of Decedent at approximately 1:30 McMullen or other

6

detention failed to undertake any medical or psychological screening which was required by Jackson County Sheriff Department policies.

46. Due to being made aware that Decedent had intentionally set fire to herself and the patrol car, the detention officers recognized the substantial risk of violence she might create and McMullen texted Akins to get direction on where to place her in the detention center.

47. The jail was under the direction and control of Hall and Buchanan who were responsible to ensure their officers were properly trained and properly followed all detention statutes and regulations established by the State of North Carolina.

48. During her confinement at the jail, multiple deputies, including McMullen, Couvillon, Collini, Bradley, Nicholson, and Elliott (the "Deputies") had the opportunity to observe and evaluate Decedent and several reported Decedents reported that Plaintiff smelled of alcohol and or appeared to be intoxicated or impaired.

49. In addition to her alcohol use and intoxication, the Deputies were aware of Decedent's erratic behavior and suicidal actions of setting herself on fire while handcuffed and locked in the back of Ridge's patrol car and further considered her to be a substantial risk of harm to other inmates such that she was segregated from other prisoners.

50. Between 3:30 and 4:00 PM due to the Deputies knowledge of Decedent's erratic behavior of setting herself on fire and their concerns Decedent might present a harm to other detainees, she was placed by McMullen in the Booking Room/Bond Room.

51. The Booking Room/Bond Room was not designed as a permanent detention facility and therefore failed to comply with normal detention facility requirements, had only one surveillance camera which did not provide for surveillance of the entire room in violation of North Carolina Detention Center regulations.

52. The Booking Room/Bond Room also had a wall mounted telephone with a cord extending several feet from the wall which provided the means for detainees, including Decedent, to hang themselves.

53. At 4:06 PM a Restraining Order was entered by Magistrate Judge Albert Reagan which reported Plaintiff had made threats of suicide. (See Appendix A to original complaint)

54. At approximately 6:15 PM, Parris, met with Decedent in the Booking Room/Bond Room and advised her that she was being charged with 1) simple assault, 2) possession of a stolen vehicle, 3) larceny of a motor vehicle, 4) breaking and entering, 5) assault on a governmental official, 6) intentional burning of government property, 7) intentional assault on an assistance animal, and 8) violation of a domestic violence order.

55. At the same time Parris delivered a copy of the Restraining Order, which reported the Decedent has made threats to commit suicide, then left Decedent unattended.

56. At approximately 6:17 PM, after being advised that she would not be provided bail and

would be retained in the jail, Decedent went to the back of the Booking Room, outside of

the view of the single surveillance camera, and wrapped the phone cord around her neck and sat down to hang herself.

57. Decedent remained alive until at least 6:27 PM when it is believed she became unconscious and stopped breathing.

58. Detention Center Deputies did not check on the Decedent until 7:06 PM when she was found by Couvillon with no pulse and the phone cord wrapped around her neck.

59. Decedent was resuscitated by the emergency medical staff and transported to Harris Regional Hospital and then transferred to Memorial Mission Hospital, where she later died on January 18, 2019 from anoxic brain injury and multiple organ failure.

60. Prior to the suicide death of the Decedent in January 2019, the Jackson County Detention Facility had experienced the suicide of inmate Chuckie Moose in November 2014 and the suicide of Steve Ross in 2015 for which North Carolina jail inspectors ruled the Detention officers had violated North Carolina Detention regulations.

## FIRST CAUSE OF ACTION
## WRONGFUL DEATH

### DEFENDANTS HALL, BUCHANAN, AKINS, PARRIS, WATSON, McMULLEN, COUVILLON, COLLINI, , BRADLEY, NICHOLSON & ELLIOTT

61. The foregoing paragraphs of this Complaint, 1-60 are incorporated by reference as if fully restated herein.

62. NCGS 153A-224 is a safety statute expressly enacted to protect the detainees, including Decedent, whose liberty has been taken and who are confined in a local detention facility, and imposes upon Defendants a duty to ensure detainees, including Decedent are protected from harm and provided necessary medical care.

63. The Jackson County Detention Facility is a local confinement facility for purposes of NCGS 153A-224.

64. North Carolina Detention Regulations require enhanced surveillance and increased direct observation of four-times-per-hour of inmates who display behaviors of intoxication, smelling of alcohol, erratic behaviors, suicide attempt, or a previous record of mental illness. 10A NCAC 14J .0601(b) and 10A NCAC 14J .0601(c)

65. Defendants Akins, Parris, Watson, McMullen, Couvillon, Collini, Bradley, Nicholson, and Elliott violated their statutory duties and were negligent as follows:

8

a. failing to properly report Decedent's attempted suicide to appropriate medical care providers prior to her confinement to ensure appropriate medical and mental health care could be provided.

b. failing to ensure appropriate and necessary mental evaluation of the Decedent was undertaken in light of her known suicide attempt while in Parris's patrol car,

c. failing to undertake a mental health and suicide prevention screening while processing Decedent into the jail in violation of Detention Center policy,

d. detaining Decedent in the "booking room" which had a wall mounted telephone with a cord which extended from the wall providing the means to hang herself after knowing of or being made aware of her suicide attempt earlier in the day,

e. detaining Decedent in the "booking room" due to her known suicide attempt when such room was known have only one camera and lacked the necessary surveillance capabilities required by 10A NCAC 14J .0101 et seq.

f. failing to maintain necessary and appropriate enhanced surveillance of the Decedent four times per hour in light of her known suicide attempt, alcohol use, intoxication and known risk of alcohol withdraw in violation of North Carolina Detention Regulations including 10A NCAC 14J .0601

g. failing to provide custodial supervision and secure appropriate medical and mental health care in violation of NCGS 153A-224.

66. Their breach of the affirmative duty imposed by a safety statute constituted negligence per se.

67. Their breaches of their statutory duties pursuant to NCGS 153A-224 to provide continuous custodial supervision of detainees and to secure necessary medical and mental health care precludes the application of governmental immunity.

68. As a proximate result of the negligence actions of Defendants Parris, Watson, Akins, McMullen, Couvillon, Collini, Bradley, Nicholson, and Elliott, the Decedent was able to hang herself and commit suicide while in their custody, which took over 10 minutes to complete, during which she suffered agonizing pain and emotional distress until her death.

69. Hall and Buchanan are liable, under the doctrine of respondent superior, both under common law and by statute for the negligent actions and omissions of Defendants Parris, Akins McMullen, Watson, Couvillon, Collini, Bradley, Nicholson, and Elliott, which led to the death of the Decedent.

9

Case 1:20-cv-00057-MR-WCM   Document 19   Filed 07/15/20   Page 9 of 16

70. Hall's duty is to operate the county jail in a safe manner which is a non-delegable duty under NCGS 162-22 & 24.

71. Defendants Parris, Watson, Akins, McMullen, Couvillon, Collini, Bradley, Nicholson, and Elliott are individually sued as some of their actions were taken outside the scope of their authority, including their systematic failure to perform necessary enhanced surveillance of the Decedent, after they had prior knowledge of her alcohol use, apparent intoxication, her suicide attempt earlier in the day, and previous report of alcohol withdraw until she was found unconscious with a phone cord wrapped around her neck, which such actions demonstrated willful, wanton, and reckless disregard for her safety. Such wanton and reckless disregard for a pre-trial detainee, including the Decedent, pierces the shield of public officer immunity.

72. As a result of Defendants Akins, Parris, Watson, McMullen, Couvillon, Collini, Bradley, Nicholson and Elliott's willful, wanton, reckless, and negligent conduct, Decedent was able to hang herself on January 16, 2019 while in the custody of the Jackson County Detention Center which resulted in death on January 18, 2019.

73. In light of Decedent's known alcohol use, apparent intoxication, and suicide attempt while in custody of Parris earlier in the day, and her previous report of alcohol withdraw Defendants knew or should have known Decedent was an increased risk to commit suicide.

74. Plaintiff, in his capacity as Administrator of the Estate of Melissa Rice, is entitled to recover from Defendants jointly and severally, all damages for wrongful death allowed pursuant to NCGS 28A-282(b), including but not limited to the loss of Decedent's love, comfort, and society as well as her pain and suffering which she experienced before her death.

75. Plaintiff also seeks and is entitled punitive damages against the Defendants, pursuant to Chapter 1D and NCGS 28A-18-2(b)(5), based on their actual malice toward Decedent and their wanton and reckless disregard for her safety.

## SECOND CAUSE OF ACTION
## FAILURE TO ADEQUATELY TRAIN AND SUPERVISE

### DEFENDANTS HALL AND BUCHANAN

76. The foregoing paragraphs of this Complaint 1-72 are incorporated by reference as if fully restated herein.

77. At all times relevant hereto Defendant Hall had a non-delegable duty to maintain adequate supervision of the jail under NCGS 162-24.

78. Upon information and belief, Hall assigned Buchanan to oversee the operation of the Jackson County Detention Center, and as such Buchanan had a duty to insure the staff of the jail, were adequately trained and supervised to provide for all necessary medical care and safety of all inmates, including Decedent.

79. Hall and Buchanan were negligent in failing to properly train and supervise the staff of the jail, including Defendants McMullen, Couvillon, Collini, Bradley, Nicholson, and Elliott as to the proper evaluation of the Decedent's mental health and safety needs, the proper detention area in light of her known suicidal attempt and history of alcohol withdraw, and the proper use of enhanced surveillance as required by 10 NCAC 14J .0601 in light of Decedent's known alcohol use, intoxication, and suicide attempt and history of withdraw.

80. As a result of the negligence of Hall and Buchanan, Defendants McMullen, Couvillon, Collini, Bradley, Nicholson, and Elliott failed to provide the necessary suicide screening, mental health care and enhanced supervision as required by 10 NCAC 14J .0601 in spite of being aware of the alcohol use, apparent intoxication, prior suicide attempt, and history of alcohol withdraw, which resulted the death of Decedent while in the custody of the Jackson County Detention Center.

81. Plaintiff also seeks and is entitled punitive damages against the Defendants, pursuant to Chapter 1D and NCGS 28A-18-2(b)(5), based on their actual malice toward Decedent and their wanton and reckless disregard for her safety.

### THIRD CAUSE OF ACTION
### VIOLATION OF 42 U.S.C. 1983
### FOURTEENTH AMENDMENT VIOLATIONS

82. The foregoing paragraphs of this Complaint 1-81 are incorporated by reference as if fully restated herein.

83. All Defendants are "persons" and their actions and omissions complained of herein were taken under color of North Carolina law for purposes of 42 U.S.C. Section 1983.

84. The rights of pre-trial detainees, including the Decedent, and the conduct of Defendants Hall, Buchanan, Akins, McMullen, Couvillon, Collini, Nicholson, Elliott, and Bradley are governed by the due process clause of the Fourteenth Amendment, which sets the standard of objective reasonableness and deliberate indifference.

85. The actions of Defendants in failing to fully and adequately provide truthful and necessary medical information, including the known suicide attempt by Decedent to emergency medical personnel to ensure a proper psychological evaluation was completed, and their failure to provide unstable and emotionally distressed detainees,

11

including the Decedent with four-times-per-hour direct observation and watch as required by North Carolina law, including 10A NCAC 14J. 0601, violated the standard of care.

86. Defendants Hall and Buchanan's intentional and repeated failure to train and supervise their jail staff, including the other Defendants named herein, in recognizing and properly responding to Decedent's alcohol use, apparent intoxication, unstable behavior, suicide attempt and history of alcohol withdraw also violated the standard of objective reasonableness and willful indifference to the rights of Decedent.

87. Defendant Hall is sued in his official capacity for this Fourteenth Amendment violation.

88. The actions described herein by the Defendant Parris, Watson, Akins, McMullen, Couvillon, Collini, Nicholson, Elliott, and Bradley violated the Fourteenth Amendment standard of deliberate indifferences, including,

    a. failing to recognize and properly report to emergency medical staff of Decedent's suicide attempt during her pre-detention medical evaluation to ensure she received the necessary and appropriate mental health evaluation prior to her detention.

    b. failing to recognize Decedent's intoxicated condition, known suicide attempt during her arrest, and prior history of alcohol withdraw. and provide for necessary and required enhanced surveillance four-times-per-hour.

    c. detaining Decedent, who was known to have been under the influence of alcohol, being intoxicated, having a history of alcohol withdraw and attempted suicide earlier in the day, in the booking room which had an exposed phone cord available which provided the means to commit suicide, as well as not having the necessary and required surveillance camera in violation of 10 NCAC 14J.0101.

89. Those actions violated the Fourteenth Amendment standard of deliberative indifference to the rights of the Decedent.

90. The Decedent was detained under conditions which posed a substantial risk of serious harm or death and Defendants Akins, McMullen, Couvillon, Collini, Bradley, Nicholson and Elliott knew and disregarded those risks to Decedent's health and safety, including placing her in a detention location which did not meet state regulations which permitted her to wrap the phone cord around her neck, and hang herself, which violated Decedent's Fourteenth Amendment rights.

91. Alternatively, these actions and omissions showed reckless disregard and open contempt for Decedent's safety and well-being by Defendants, which satisfy the deliberate indifference standard.

92. Defendants Parris, Watson, Akins, McMullen, Couvillon, Collini, Bradley, Nicholson, and Elliott had actual and constructive knowledge of Decedent's alcohol use, apparent intoxication, suicidal behaviors, including setting herself on fire while handcuffed in the

12

back of a locked patrol car with no means to escape, and history of alcohol withdraw and were deliberately indifferent to Decedent's need for a mental health assessment and enhanced surveillance and failed to taken action.

93. Defendants Parris, Watson, Akins, McMullen, Couvillon, Collini, Bradley, Nicholson, and Elliott are sued individually under 42 U.S.C. Section 1983 for these Fourteenth Amendment violations.

94. The actions of these same individual Defendants also violated the standards of common decency as to shock the conscience of the community and thus violated Decedent's rights to substantive due process also protected by the Fourteenth Amendment.

95. As a result of these violations by Defendants Parris, Watson, Akins, McMullen, Couvillon, Collini, Bradley, Nicholson, and Elliott the Decedent suffered a slow and agonizing death over the course of 10 minutes when left to hang herself in the booking room, and was thereafter resuscitated and thereby endured several additional days of agonizing pain and suffering before her death on January 18, 2019.

96. Plaintiff seeks and is entitled to compensatory damages as allowed by 42 U.S.C. Section 1983 and NCGS 28A-18-2(b)(5) against Defendants Parris, Watson, Akins, McMullen, Couvillon, Collini, Bradley, Nicholson, and Elliott, including but not limited to damages for pain and suffering and humiliation which Decedent experienced before her death.

97. Plaintiff also seeks and is entitled to punitive damages from Defendants Parris, Watson, Akins, McMullen, Couvillon, Collini, Bradley, Nicholson, and Elliott in their individual capacities as allowed under 42 U.S.C. 1983 to due to these Defendants deliberate and reckless indifference to the Decedent's federally protected rights.

98. Defendant Hall is also liable as the supervisor and director of the jail, due to the actions of the deputies at the jail of failing to notify emergency medical staff of the suicide attempt of the Decedent to ensure she received the appropriate psychological evaluation and treatment, intentionally and repeatedly failing to properly training and supervising the jail's detention staff on how to attend to the medical and psychological needs of detainees, including the Decedent, who was known to have consumed alcohol, was apparently intoxicated, had attempted suicide immediately prior to detainment, and suffered from alcohol withdraw and failing to place Decedent on the required four-times-per-hour direct observation as required by North Carolina law. There is a causal link to between these willful, wanton and deliberate indifference to these jail processes, guarding training, and detainee monitoring deficiencies and the handling of the death of Decedent while in the Jackson County Detention Facility.

99. Defendant Buchanan is also liable as the supervisor of Defendants Akins, McMullen, Couvillon, Collini, Bradley, Nicholson, and Elliott, by his intentional and repeated failure to properly train and supervise the Deputies as he implicitly authorized, approved of, and knowingly acquiesced in their deliberate indifference to Decedent's federally protected rights which was itself deliberately indifferent to Decedent's rights

13

## FOURTH CAUSE OF ACTION
## VIOLATION OF NCGS 162-55

100. The foregoing paragraphs of this Complaint, 1-99 are incorporated by reference as if fully restated herein.

101. The actions and omissions alleged herein by Defendants Hall, Buchanan, Parris, Watson, Akins, McMullen, Couvillon, Collini, Nicholson, Elliott, and Bradley showed reckless indifference and thoughtful disregard for the safety of the Decedent and their actions are equivalent to criminal neglect, and as a result Plaintiff, on behalf of the Estate, is entitled to recovery treble the compensatory damages awarded, pursuant to NCGS 162-55.

WHEREOF, Plaintiff as Administrator for the Estate of Melissa Rice hereby prays the Court as follows:

1. For a trial by jury on all issues so triable.

2. For a judgement in excess of $1,000,000 jointly and severally against Defendant Hall in his official capacity under the principles of respondent superior, and against Defendants Buchanan, Parris, Watson, Akins, McMullen, Couvillon, Collini, Bradley, Nicholson, and Elliott, for all damages permitted for the wrongful death of Decedent under N.G.C.S. 28A-18-2(b), including punitive damages.

3. For judgement in excess of $1,000,000 jointly and severally against Defendant Hall in his official capacity, and against Defendants Buchanan, Parris, Watson, Akins, McMullen, Couvillon, Collini, Bradley, Nicholson, and Elliott, in their individual capacities for their violations of 42 U.S.C. 1983 for compensatory damages.

4. For judgement in excess of $1,000,000 against Parris, Watson, McMullen, Akins, Couvillon, Collini, Bradley, Nicholson and Elliott, in their individually capacities for their violations of 42 U.S.C. 1983 for punitive damages.

5. For an award of treble the compensatory damages against Defendants Hall, Buchanan, Parris, Watson, McMullen, Couvillon, Collini, Bradley, Nicholson, and Elliott under N.C.G.S. 162-55.

6. An Order that Defendants pay Plaintiff's costs as allowed under 42 U.S.C. section 1988, including reasonable attorney fees.

7. And for such other and further relief as the Court deem equitable and just.

Respectfully submitted this the 15 day of July 2020.

*[signature]*

Thomas F. Ramer, N.C. Bar # 12650
Ganly & Ramer, PLLC
Attorneys for the Plaintiff
61 N. Market Street
Asheville, N.C. 28801
828-252-4491
Fax: 828-252-9508
tom@ganlyramer.com

15

## CERTIFICATE OF SERVICE

I certify that I have served the preceding Amended Complaint upon Patrick Flanagan, attorney for defendant Hall et al and William E. Freeman, attorney for defendant Western Surety by electronic transmittal to:

phf@cshlaw.com

freeman@manningfulton.com

Ganly & Ramer

By: _____

Dated: July 15, 2020